IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | | |
|---|---|---|---|
| **ROBERT M. THOMAS,** | ) | Civil Action No. 7:10-cv-00090 | |
| Plaintiff, | ) | | |
| | ) | | |
| v. | ) | | |
| | ) | | |
| **DR. HARVARD STEPHENS,** | ) | By: | Hon. Michael F. Urbanski |
| Defendant. | ) | | United States Magistrate Judge |

## REPORT AND RECOMMENDATION

Plaintiff Robert M. Thomas, a Virginia inmate proceeding pro se, filed a civil rights complaint pursuant to 42 U.S.C. § 1983 with jurisdiction vested in 28 U.S.C. § 1343. Plaintiff named as defendants in his original complaint Fred Shilling, the Virginia Department of Corrections' ("VDOC") Health Services Director; the VDOC Physicians Review Panel ("Panel"); and Dr. Mobashar, the facility doctor at the Buckingham Correctional Center ("BCC"). The court granted plaintiff's prior request to voluntary dismiss all claims against Shilling and terminated him as a defendant. By its November 8, 2010, memorandum opinion and order, the court granted Dr. Mobashar's motion to dismiss and subsequently terminated him and the Panel as defendants. Although no claim survived review, the court allowed plaintiff to submit an amended complaint to name another defendant. The court noted that it "will not speculate about who a proper defendant might be, but notes that . . . Fred Schilling states in his affidavit that, 'the Chief Physician of the VDOC medical staff is responsible for making all clinical, therapeutic, and treatment decisions regarding the heath care and treatment provided to VDOC inmates.'" (Mem. Op., Nov 8, 2010.)

Plaintiff subsequently filed a one-paragraph amendment, requesting in pertinent part "that his complaint be amended and placed against Dr. Harvard Stephens, Chief Physician of Health Services, [VDOC], as Defendant." (Pl.'s Second Mot. to Amend (no. 31) 1.) Plaintiff

also reiterated his request for $10,000 in damages and an injunction to compel the requested eye surgery. The court granted the motion to amend and directed the Clerk to serve the complaint and its amendments on Stephens. Following the entry of that order, the defendant filed a motion for summary judgment, and plaintiff responded, making the matter ripe for review.

By an order dated April 13, 2010, the Honorable Samuel G. Wilson, United States District Judge, referred all dispositive motions to the undersigned to conduct any necessary hearings and submit to him proposed findings of facts and recommendations for disposition. For the reasons set forth below, the undersigned finds that no rational trier of fact could find in plaintiff's favor and recommends that defendant's motion for summary judgment be granted.

I.

The record reveals the following facts. Plaintiff's right eye has a cataract and can perceive only the outlines of images, and the vision in his left eye, which is cataract free, is 20/100 without glasses. (Compl. Attach. (no. 1-2) 2.) Plaintiff alleges that he needs cataract surgery to prevent blindness and that the defendant will not authorize the surgery.

An optometrist evaluated plaintiff's eyes and recommended that plaintiff receive eyeglasses to correct his left eye from 20/100 to 20/30 vision and receive cataract-removal surgery on his right eye. (Id. 3.) Plaintiff saw the doctor at BCC, Dr. Mobashar, on April 14, 2009, and told him that he could not see anything in his right eye. On April 15, 2009, Dr. Mobashar submitted a request to the Panel, asking that plaintiff be referred to an eye clinic for evaluation and extraction of the cataract. The Panel returned the doctor's request and directed him to determine if plaintiff's left eye with 20/100 vision would be normal or close to normal

with corrective lenses. The Panel also described the VDOC criteria for a cataract referral and asked the doctor if plaintiff satisfied these conditions for cataract surgery. These criteria were:

1.) Presence of untreated cataracts must be significantly affecting activities of daily living (i.e., losing ability to recognize faces, navigate obstacles, feed and bathe oneself).

2.) If the above criteria [in paragraph (1)] is not met, then at least three of the following must be met:
   a.) Significantly decrease visual acuity, to 20/100 or worse that may be reasonably expected to improve postoperatively.
   b.) Concomitant presence of ocular comorbidity (e.g., glaucoma, diabetic retinopathy, and macular degeneration).
   c.) Presence of other disability such as wheelchair or deafness.
   d.) Presence of bilateral cataracts.

(Def.'s Aff. (no. 43) ¶ 4.) Stephens avers that these criteria "are based on general clinical guidelines and reasonable community standards of medical care" and "are basically consistent with the Mayo Clinic's guidelines." (Id.) Stephens acknowledges that "[t]he American Society of Ophthalmology recommends the use of stronger eyeglasses or magnifying lenses before choosing surgery" because "[t]here are many medical complications associated with cataract surgery such as inflammation, infection, bleeding, swelling, retinal detachment, glaucoma, and secondary cataract." (Id.)

Dr. Mobashar determined that plaintiff did not meet the criteria for a referral and recommended the alternative treatment plan of eyeglasses to make the vision in his "left eye ... 20/30[.]" (Compl. 6; Compl. Attach. 5.) Dr. Mobashar explained that plaintiff would have to "wait until [his] left eye deteriorates to the stage of his right eye before [he] can have . . . surgery[.]" (Compl. 6.)

On June 7, 2009, plaintiff filed an informal grievance to discover the status of the optometrist's surgery recommendation because he had not had heard anything more about the

surgery and his cataract became worse. (Id.) Staff responded to his grievance, informing plaintiff that the Panel did not recommend surgery because Dr. Mobashar recommended the alternative treatment plan.

Plaintiff filed a regular grievance to complain about the Panel's denial of optometrist's recommendation. The BCC Warden deemed the grievance unfounded because the facility's physician, not the optometrist who visited the facility, determines the appropriate medical response to an inmate's medical need. Plaintiff appealed the Level I review to the VDOC Health Services Director, who upheld the Warden's decision. The Health Services Director told plaintiff that he did not qualify for cataract surgery based on the VDOC policy. The Director also reiterated the Warden's response that inmates "may not chose their own practitioner or medical specialist." (Compl. Attach. 1.)

Dr. Stephens explains that cataracts "essentially never cause permanent blindness" and that the VDOC monitors plaintiff's eye health each year with an optometrist's examination, which would detect any "developing, potentially deleterious complications[.]" (Def.'s Aff. ¶ 5.) Stephens avers that once plaintiff's diagnosis changes to meet the criteria for cataracts surgery, his request would be approved and ordered. (Id.) Plaintiff alleges that the defendant, as Chairman of the Physicians Review Panel, is more concerned with mitigating medical costs than ensuring his receipt of medical services to comply with the Eighth Amendment's prohibition against cruel and unusual punishment.

II.

A party is entitled to summary judgment "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact

and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Material facts are those necessary to establish the elements of a party's cause of action. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A genuine issue of material fact exists if, in viewing the record and all reasonable inferences drawn therefrom in a light most favorable to the non-moving party, a reasonable fact-finder could return a verdict for the non-movant. Id. The moving party has the burden of showing – "that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). If the movant satisfies this burden, then the non-movant must set forth specific facts admissible as evidence that demonstrate the existence of a genuine issue of fact for trial. Fed. R. Civ. P. 56(c); id. at 322-23. A party is entitled to summary judgment if the record as a whole could not lead a rational trier of fact to find in favor of the non-movant. Williams v. Griffin, 952 F.2d 820, 823 (4th Cir. 1991).

Conversely, summary judgment is inappropriate if the evidence is sufficient for a reasonable fact-finder to return a verdict in favor of the non-moving party. Anderson, 477 U.S. at 248. Even if there is no dispute as to the evidentiary facts, summary judgment is also not appropriate where the ultimate factual conclusions to be drawn are in dispute. Overstreet v. Ky. Cent. Life Ins. Co., 950 F.2d 931, 937 (4th Cir. 1991). A court may neither resolve disputed facts or weigh the evidence, Russell v. Microdyne Corp., 65 F.3d 1229, 1239 (4th Cir. 1995), nor make determinations of credibility, Sosebee v. Murphy, 797 F.2d 179, 182 (4th Cir. 1986). Rather, the party opposing the motion is entitled to have his or her version of the facts accepted as true and, moreover, to have all internal conflicts resolved in his or her favor. Charbonnages de France v. Smith, 597 F.2d 406, 414 (4th Cir. 1979). However, "[w]hen opposing parties tell

two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." Scott v. Harris, 550 U.S. 372, 380 (2007). Furthermore, a party "cannot create a genuine issue of material fact through mere speculation or the building of one inference upon another." Beale v. Hardy, 769 F.2d 213, 214 (4th Cir. 1985). Therefore, "[m]ere unsupported speculation . . . is not enough to defeat a summary judgment motion." Ennis v. Nat'l Ass'n of Bus. & Educ. Radio, Inc., 53 F.3d 55, 62 (4th Cir. 1995).

Plaintiff does not argue any theory of liability against Stephens in either the original complaint or in the most recent amendment. Therefore, the court liberally construes the claim as against the defendant is both his official and individual capacities and as arising under the Eighth Amendment's prohibition against cruel and unusual punishment and the Fourteenth Amendment's equal protection clause.[1] However, plaintiff should not receive an injunction ordering the defendant in his official capacity to approve cataract surgery because plaintiff fails to carry his burden of proof, and no rational trier of fact could rule in plaintiff's favor. The defendant is also immune from damages.

  A. Plaintiff is not entitled to injunctive relief because the record does not support finding that the defendant violated plaintiff's constitutional rights.

    1. Eighth Amendment claim.

A plaintiff must show that a defendant acted with deliberate indifference to a serious medical need in order to state a claim under the Eighth Amendment for cruel and unusual

---

[1] Plaintiff invoked these protections in his original complaint against the prior defendants who are no longer parties to this action.

punishment. Estelle v. Gamble, 429 U.S. 97, 104 (1976). In order to show deliberate indifference, a public official must have been personally aware of facts indicating a substantial risk of serious harm, and the official must have actually recognized the existence of such a risk. Farmer v. Brennan, 511 U.S. 825, 838 (1994). "[T]he treatment must be so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." Miltier v. Beorn, 896 F.2d 848, 851 (4th Cir. 1990). "Deliberate indifference may be demonstrated by either actual intent or reckless disregard." Id. See Parrish ex rel. Lee v. Cleveland, 372 F.3d 294, 303 (4th Cir. 2004) ("[T]he evidence must show that the official in question subjectively recognized that his actions were 'inappropriate in light of that risk.'"). "A defendant acts recklessly by disregarding a substantial risk of danger that is either known to the defendant or which would be apparent to a reasonable person in the defendant's position." Miltier, 896 F.2d at 851-52. A medical need serious enough to give rise to a constitutional claim involves a condition that places the inmate at a substantial risk of serious harm, usually loss of life or permanent disability, or a condition for which lack of treatment perpetuates severe pain. Sosebee v. Murphy, 797 F.2d 179, 181-83 (4th Cir. 1986)

However, claims of medical malpractice and negligent diagnosis are not cognizable in a § 1983 proceeding. Estelle, 429 U.S. 104-05. See Johnson v. Quinones, 145 F.3d 164, 168-69 (4th Cir. 1998) (noting that treating doctors must actually draw the inference that an inmate's symptoms signify the presence of a particular condition and that a failure to draw such an inference may present a claim for negligence, but not a claim under the Eighth Amendment). A prisoner's disagreement with medical personnel over the course of his treatment also does not state a § 1983 claim. Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985); Russell v. Sheffer,

528 F.2d 318, 319 (4th Cir. 1975) (per curiam). Furthermore, mere conclusory allegations are not sufficient to state a claim. Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007).

Plaintiff fails to establish that his cataract constitutes a serious medical need under the Eighth Amendment because the record does not demonstrate a "substantial risk" of serious harm or permanent disability. Plaintiff concludes without support that his cataract may potentially lead to permanent vision loss. Dr. Stephens, however, avers that cataracts essentially never cause permanent blindness and an optometrist evaluates plaintiff's eyes every year to monitor any deterioration in eyesight. Dr. Mobashar evaluated plaintiff against objective criteria that assessed his cataract's impact on his overall health. By his medical assessment, plaintiff's cataract, by itself or treated with higher-power eyeglasses, was not significantly affecting his daily living or subjecting him to a risk of serious harm. Plaintiff fails to submit evidence to counter the defendant's medical opinion that blindness is highly unlikely, and he simply speculates that blindness will ultimately result, which constitutes a mere disagreement about his diagnosis. See Russell, 528 F.2d at 319 ("Questions of medical judgment are not subject to judicial review."). Furthermore, his cataract is not a permanent disability to the extent that blindness has not occurred and eyeglasses improves his eyesight to 20/30.

Plaintiff also fails to establish Dr. Stephens' deliberate indifference. The court notes that Dr. Stephens was never responsible for medically evaluating plaintiff; the defendant merely replied to a grievance appeal and promulgated the criteria by which inmates' physicians can evaluate surgery or eyeglasses as the appropriate medical treatment. The criteria and recommended treatment is objective, applying equally to all VDOC inmates, and in conformity

8

with standards endorsed by the Mayo Clinic[2] and the American Society of Ophthalmology[3]. Plaintiff fails to describe how the defendant knew that the criteria or his grievance response were inappropriate after plaintiff's doctor and optometrist medically evaluated plaintiff. Accordingly, plaintiff fails to establish that the defendant was personally aware of facts indicating a substantial risk of serious harm or that he actually recognized the existence of such a risk.

2. Fourteenth Amendment claim

Plaintiff invokes the Fourteenth Amendment's equal protection clause because he believes that "if [he] was a free citizen in society, no Physicians Review Panel in their right mind would ever recommend that [he] wait until [his] other eye – the good left eye – also deteriorate to the level of [his] damaged eye before [he] can have surgery." (Compl. 6.) Plaintiff concludes without support that VDOC agents do not authorize the surgery because they are "more concerned with keeping costs down . . . due to budget constraints." (Id.)

The Equal Protection Clause of the Fourteenth Amendment provides that a state may not "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. Thus, "all persons similarly situated should be treated alike." City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 439 (1982). To establish an equal protection violation, plaintiff must first demonstrate that he was "treated differently from others with whom he is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination"; once this showing is made, the court proceeds to determine whether the disparity in treatment can be justified under the requisite level of scrutiny. See Arlington

---

[2]The Mayo Clinic is a non-profit medical research and practice group.

[3]Ophthalmology is the medical science of the anatomy and diseases of eyes.

9

Heights v. Metro. Hous. Dev. Corp., 429 U.S. 252, 264-65 (1977) (requiring proof of racially discriminatory intent or purpose to show an equal protection violation); Morrison v. Garraghty, 239 F.3d 648, 654 (4th Cir. 2001). Plaintiff must set forth "specific, non-conclusory factual allegations that establish improper motive." Williams v. Hansen, 326 F.3d 569, 584 (4th Cir. 2003).

Plaintiff is clearly not similarly situated to the class of free people to which he compares himself. Plaintiff's argument that he, as an inmate, should have the same discretion to choose his medical care with the same liberty as free people, who can elect how to prioritize their medical spending, is meritless. See, e.g., Polk County v. Dodson, 454 U.S. 312, 320 (1981) (stating an indigent convict is unable to choose the professional who will render him traditionally private services); Ingraham v. Wright, 430 U.S. 651, 669 (1977) (stating prisoners and students in public schools "stand in wholly different circumstances, separated by the harsh facts of criminal conviction and incarceration"). Furthermore, plaintiff's evidence in support of this claim also undercuts his argument. Plaintiff filed in response to the defendant's motion for summary judgment an alleged letter, unsigned, from an optometrist. The optometrist states that he does not refer people for surgery until "when even with their best corrected glasses on they still can't see the 20/40 line." (Letter in Supp. of Pl.'s Resp. (no. 42-1) 1.) Even if the court were to consider this unsigned letter from an alleged optometrist, it directly contradicts plaintiff's equal protection argument because plaintiff's corrected vision is 20/30, below this optometrist's threshold to recommend surgery to the general public.

B. Defendant is immune from damages.

Stephens argues that he is immune from damages in his official capacity. Neither a state nor its officials acting in their official capacities are persons for purposes of § 1983 damages actions. Will v. Michigan Dep't of State Police, 491 U.S. 58, 70-71, n.10 (1989). Therefore, to the extent that plaintiff is suing the defendant in his official capacity, he is immune from suit for damages. Id.

Stephens also argues that the court should award him summary judgment on the basis of qualified immunity. Under the doctrine of qualified immunity, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). Whether a defendant can claim qualified immunity is a pure question of law and is properly determined pretrial. Saucier v. Katz, 533 U.S. 194, 200-01 (2001) (modified by Pearson v. Callahan, 129 S. Ct. 808 (Jan. 21, 2009) (permitting lower courts the discretion to determine which qualified immunity prong to analyze first)). Qualified immunity may be invoked by a government official sued in his personal capacity but is not available in an official-capacity suit brought against a government entity or a government officer as that entity's agent. Ridpath v. Bd. of Governors Marshall Univ., 447 F.3d 292, 306 (4th Cir. 2006).

Qualified immunity is an immunity from suit rather than a mere defense to liability. A plaintiff bears the burden to show that a defendant's conduct violated the plaintiff's right. Bryant v. Muth, 994 F.2d 1082, 1086 (4th Cir. 1993). However, a defendant must demonstrate that the right was not clearly established at the time of the incident to receive qualified

immunity. Henry v. Purnell, 501 F.3d 374, 378 (4th Cir. 2007). "The unlawfulness of the action must be apparent when assessed from the perspective of an objectively reasonable official charged with knowledge of established law." Lopez v. Robinson, 914 F.2d 486, 489 (4th Cir. 1990). See Anderson v. Creighton, 483 U.S. 635, 640 (1987) ("This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful . . . but it is to say that in the light of pre-existing law the unlawfulness must be apparent.").

Stephens is entitled to qualified immunity in his individual capacity because plaintiff fails to show that Stephen's conduct violated the plaintiff's constitutional right. As discussed supra, the record is devoid of factual support to find that plaintiff's cataract is a serious medical need; the defendant exhibited deliberate indifference; plaintiff's treatment is so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness; or plaintiff is similarly situated to non-incarcerated people. Plaintiff's disagreement with the proposed treatment is insufficient to invoke a remedy under the Eighth Amendment. Therefore, the defendant is entitled to qualified immunity in his individual capacity and is immune from damages in his official capacity.

III.

For the foregoing reasons, plaintiff may not recover damages against the defendant in his individual capacity because of qualified immunity or in his official capacity because of sovereign immunity, and plaintiff is not entitled to equitable relief because his cataract is not presently a serious medical need and defendant did not exhibit deliberate indifference. Accordingly, the undersigned **RECOMMENDS** that the defendant's motion for summary

judgment be **GRANTED**. The Clerk is directed to immediately transmit the record in this case to the Honorable Samuel G. Wilson, United States District Judge. Both sides are reminded that pursuant to Rule 72(b) they are entitled to note any objections to this Report and Recommendation within fourteen (14) days hereof. Any adjudication of fact or conclusion of law rendered herein by the undersigned not specifically objected to within the period prescribed by law may become conclusive upon the parties. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1)(C) as to factual recitations or findings as well as to the conclusions reached by the undersigned may be construed by any reviewing court as a waiver of such objection.

      The Clerk is directed to send copies of this order to the plaintiff and counsel of record for the defendant.

Entered: April 4, 2011

*/s/ Michael F. Urbanski*

Michael F. Urbanski
United States Magistrate Judge